**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

|  |  |
|---|---|
| In re:<br><br>SANDY PINES, LLC,<br><br>Debtor. | Chapter 11<br>Case No. 26-20038 |

**BANGOR SAVINGS BANK'S MOTION FOR: (A) RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d); OR (B) IN THE ALTERNATIVE, DISMISSAL PURSUANT TO 11 U.S.C. § 1112(b); OR (C) IN THE ALTERNATIVE, APPOINTMENT OF A TRUSTEE PURSUANT TO 11 U.S.C. §§ 1104(a) and 1112(b)**
*(Request for Expedited Determination and Limitation of Notice)*

Bangor Savings Bank (the "Senior Lender"), hereby seeks relief in response to the chapter 11 filing of Sandy Pines, LLC (the "Debtor") on the eve of the Senior Lender's foreclosure sale of the Debtor's primary asset, a seasonal "glampground" resort located at 277 Mills Road in Kennebunkport, Maine (the "Real Property") and all business assets of the Debtor (the "Personal Property," and together with the Real Property, "Collateral").  As set forth below, the foreclosure was intended to transfer ownership of the Collateral to a new owner-operator in advance of the looming 2026 season and followed the Debtor's execution of two forbearance agreements that ratified the Debtor's defaults, its liability to the Senior Lender, the Senior Lender's first lien position related to the Collateral, and the Debtor's lack of counterclaims or defenses.  The Debtor defaulted on both forbearance agreements.

As further described below, the Senior Lender seeks certain relief in the alternative.  **First**, the Senior Lender seeks relief from the automatic stay to complete its foreclosure sale under Bankruptcy Code section 362(d), both "for cause" and because the Debtor lacks equity in the Collateral and has no reasonable possibility of an effective reorganization within a reasonable period of time.  In connection with this relief, the Senior Lender seeks waiver of the stay imposed by

1

Bankruptcy Rule 4001(a)(4). **Second**, in the alternative, the Senior Lender seeks dismissal of this chapter 11 case under Bankruptcy Code section 1112(b) "for cause." **Third**, in the alternative and if the Court denies the prior requests for relief, the Senior Lender seeks appointment of a chapter 11 trustee under Bankruptcy Code sections 1104(a) or 1112(b) "for cause" and because such appointment is in the best interests of creditors. As to each of these alternative forms of relief, the Senior Lender requests an expedited determination and limitation of notice under LBR 9013-4(a) and (c).

In support of this Motion, the Senior Lender further states as follows:

## JURISDICTION AND VENUE

1.     The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on February 24, 2026 (the "Petition Date").

2.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b), and D. Me. LR Civ. 83.6.

3.     This matter is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court has Constitutional authority to enter a final order on this Motion.

4.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

5.     Timothy Harrington is the sole member of the Debtor. He is a real estate developer with a focus on hospitality properties, including the Sandy Pines Campground and the Salt Cottages, the Claremont Hotel, and the Asticou Inn (collectively, the "Acadia Collection Hotels").

6.     On December 30, 2021, the Debtor executed and delivered a commercial promissory note to the Senior Lender in the original principal amount of $11,000,000.00 (the "Note"). A true and correct copy of the Note is attached hereto as **Exhibit A**.

2

25374261.2

7. The Note is secured by, among other things, (a) a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 30, 2021 related to the Real Property which is recorded in the York County Registry of Deeds (the "Registry") at Book 18914, Page 89, a copy of which is attached hereto as **Exhibit B** (the "Mortgage") and (b) a Security Agreement dated December 30, 2021 related to the Personal Property, attached hereto as **Exhibit C** (the "Security Agreement"), which was perfected by the filing of UCC-1 financing statements in the Maine Secretary of State's Office (the "UCC Office") bearing filing numbers 20211230109000072 and 20211230109000082, which are attached hereto as **Exhibit D** (the "Financing Statements," and together with the Note, the Mortgage, the Security Agreement, the "Loan Documents").

8. By letter dated May 16, 2025, the Senior Lender provided the Debtor with notice of certain defaults under the Loan Documents: (a) incurring additional indebtedness without the Senior Lender's consent to MutualOne Bank in the amount of $8 million and Saco & Biddeford Savings Bank in the amount of $1.1 million; (b) granting MutualOne Bank a mortgage on the Real Property; (c) failing to maintain a minimum Post-Distribution Debt Service Coverage Ratio for the year ending December 31, 2023; (d) failing to maintain its primary deposit accounts with the Senior Lender; and (e) failing to provide required financial reporting, including 2024 tax returns, 2024 accountant prepared/reviewed financial statements, and a 2025 operating budget. A true and correct copy of the default notice is attached hereto as **Exhibit E**.

9. Upon information and belief, most or all of the proceeds from the loan by MutualOne Bank – secured by the Debtor's assets – were not received or used by the Debtor, and instead were used by or for the benefit of Mr. Harrington for other purposes, including renovations to the Acadia Collection Hotels (including the Asticou). The Senior Lender's belief is based on,

3

among other things, the 2023 accountant-reviewed financial statements provided by the Debtor. These financial statements and accompanying notes show the incoming loan in the amount of $8 million from MutualOne Bank and an accompanying entry reflecting a similar amount "due from member," implying that the loan proceeds were used by or for the benefit of Mr. Harrington.

10.     By letter dated July 3, 2025, the Senior Lender, through counsel, provided the Debtor with notice of acceleration of the obligations under the Loan Documents and a demand for immediate payment.  A true and correct copy of the acceleration notice is attached hereto as **Exhibit F**.

11.     On July 25, 2025, the Senior Lender, the Debtor, and Mr. Harrington entered into that certain Forbearance Agreement, a true and correct copy of which is attached hereto as **Exhibit G**.  In the Forbearance Agreement, the Debtor acknowledged the default and acceleration, and ratified the indebtedness then due to the Senior Lender, its first liens on the Collateral, and the absence of any counterclaims or offsets.  Additionally, the Debtor agreed to pay all indebtedness owed to the Senior Lender by October 31, 2025 by selling or refinancing the Acadia Collection Hotels.

12.     The Debtor defaulted under the Forbearance Agreement by failing to pay the indebtedness and on October 31, 2025, the Senior Lender and the Debtor, and Mr. Harrington entered into that certain First Amended Forbearance Agreement, a true and correct copy of which is attached hereto as **Exhibit H**.  In the First Amended Forbearance Agreement, the Debtor again acknowledged its defaults and ratified the indebtedness then due to the Senior Lender, its first liens on the Collateral, and the absence of any counterclaims or offsets.  The Debtor agreed to repay all indebtedness owed to the Senior Lender by December 31, 2025 by selling the Acadia Collection Hotels, and further to provide the Senior Lender with sale updates by November 15,

4

November 30, and December 15, 2025, as well as a copy of a signed purchase and sale agreement by November 21, 2025.

13.     The Debtor defaulted under the First Amended Forbearance Agreement.   It provided none of the promised updates, it failed to communicate with the Senior Lender, it did not provide a signed purchase and sale agreement, and it failed to repay the obligations by December 31, 2025.   Additionally, the Debtor defaulted on its regular principal and interest obligations under the Note.

14.     After the Debtor and Mr. Harrington remained unresponsive to the Senior Lender's requests for information, on January 23, 2026, the Senior Lender recorded, published, and served notice of nonjudicial foreclosure of the Real Property and a secured party sale of the Personal Property.   The combined sale was scheduled for March 5, 2026, providing the Debtor with yet more forbearance and time to repay the obligations due to the Senior Lender.

15.     However, on the Petition Date, the Debtor commenced this chapter 11 proceeding in order to invoke the automatic stay and stop the sale from occurring.

16.     As of the Petition Date, the Senior Lender is owed a total of $10,458,599.12 related under the Loan Documents, comprised of $10,028,401.73 of principal, $364,571.88 of accrued interest, $11,498.16 of late charges, and $54,127.35 of other charges and fees.   These amounts do not include unbilled legal fees, any prepayment premiums, and additional interest accruals at a rate of $2,186.74871 per day, all of which continue to accrue under the Loan Documents and are payable under the Bankruptcy Code.

17.     Pursuant to LBR 4001-1(b)(2), the Senior Lender submits:

(a) The Real Property is encumbered by the following other liens in addition to the Mortgage based on a review of public records in the Registry: (i) Mortgage and Security Agreement, as subsequently from JTJ Development LLC to MutualOne Bank dated February 3, 2017 and recorded in Book 17421, Page 595 ($8 million);

5

(ii) Mortgage and Security Agreement from the Debtor to MutualOne Bank dated May 4, 2021 and recorded in Book 18655, Page 856, and related Conditional Assignment of Leases and Rents recorded in Book 18655, Page 877 ($9 million); (iii) Mortgage and Security Agreement from the Debtor to MutualOne Bank dated May 4, 2021 and recorded in Book 18655, Page 884, and related Conditional Assignment of Leases and Rents recorded in Book 18655, Page 904 ($2.15 million); (iv) Mortgage and Security Agreement from the Debtor to MutualOne Bank dated March 29, 2023 and recorded in Book 19215, Page 538, and Conditional Assignment of Leases and Rents recorded in Book 19215, Page 558 ($8 million).[1]

(b) The Real Property is encumbered by the following other liens in addition to the Senior Lender's liens based on a review of public records in the UCC Office, and the Senior Lender does not know the amounts secured, if any, by such liens: (i) MutualOne Bank, filed May 13, 2021, Filing No. 20210513109000138, all business assets; (ii) MutualOne Bank, filed May 13, 2021, Filing No. 20210513109000138, all business assets; (iii) MutualOne Bank, filed March 30, 2023, Filing No. 20230330109000113, all business assets; (iv) The Huntington National Bank, filed April 14, 2023, Filing No. 20230414109000099, certain leased goods and software; and (v) The Huntington National Bank, filed February 7, 2024, Filing No. 20240207109000175, certain leased goods and software.[2]

(c) While the Senior Lender does not know the precise value of the Collateral, the value is likely more than the debts owed to the Senior Lender, but less than the value of the liens encumbering the Collateral.

(d) The Senior Lender is aware of no claimed exemptions related to the Collateral and because the Debtor is an entity, it cannot claim exemptions under Maine law.

(e) Because the obligations under the Loan Documents have been accelerated, there is no payment schedule.

## RELIEF REQUESTED

18. The Senior Lender requests that the Court enter an order granting stay relief under Bankruptcy Code section 362(d) related to the Collateral so that the Senior Lender may promptly complete its foreclosure sale, along with a waiver of the stay imposed by Bankruptcy Rule

---

[1] The Senior Lender knows that the debts related to liens on the Real Property prior to the Mortgage were paid at the closing of its 2021 loan, and the Senior Lender procured title insurance reflecting its first mortgage position at that time.

[2] As with the prior encumbrances on the Real Property, the Senior Lender knows that the debts related to liens on the Personal Property prior to its liens were paid at the closing of its 2021 loan.

6

4001(a)(4).  Alternatively, the Senior Lender requests that the Court enter an order dismissing this chapter 11 case under Bankruptcy Code section 1112(b).  Alternatively, if the Court denies the prior requests for relief, the Senior Lender requests that the Court enter an order appointing a chapter 11 trustee under Bankruptcy Code sections 1104(a) and 1112(b). As to all the alternative forms of relief requested, the Senior Lender requests an expedited determination and limitation of notice under LBR 9013-4(a) and (c).

**BASIS FOR RELIEF**

**I.      The Senior Lender is Entitled to Stay Relief "For Cause"**

19.     The automatic stay arises upon the filing of a bankruptcy petition and prohibits all entities from commencing or continuing any action against the debtor or property of the debtor's estate. 11 U.S.C. § 362(a).

20.     An entity may seek relief from the automatic stay, "such as by terminating, annulling, modifying, or conditioning such stay. . . ." 11 U.S.C. § 362(d).  An entity is entitled to relief from the stay "for cause, including lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). Determining whether cause exists is a matter committed to the sound discretion of the bankruptcy court. Matter of Holtkamp, 669 F.2d 505, 507 (7th Cir. 1982). Cause is to be determined on a case by case basis based on the totality of the circumstances. In re Haines, 309 B.R. 668, 674 (Bankr. D. Mass. 2004).

21.     Here, "cause" exists for numerous reasons:

**A.      Lack of Adequate Protection**

22.     First, "cause" exists because the Senior Lender is not adequately protected. While the Senior Lender believes that the value of the Collateral is likely more than the amount due to the Senior Lender under the Loan Documents, there is likely an insufficient "equity cushion"

25374261.2

because interest is accruing at almost $2,200.00 per day, plus legal fees. Moreover, it is unclear whether the Debtor has sufficient financial resources to properly maintain the Collateral, putting the existing value at risk of diminution as a result of the operation of the automatic stay.

**B.      Gross Mismanagement and Conflicts of Interest**

23.      Second, "cause" exists because of Mr. Harrington's gross mismanagement of the Debtor's financial affairs and his conflicts of interest as a fiduciary of a debtor-in-possession. "Gross mismanagement" arises when management's actions or inactions are "so deficient . . . [that] creditors may reasonably lose all confidence in the ability of management to direct the reorganization effort." 7 Alan Resnick & Henry Sommer, COLLIER ON BANKRUPTCY ¶ 1104.02[3][c][i] (18th ed. rev. 2025).   Moreover, where the individual with authority to manage and operate a debtor-in-possession appears to be serving his personal interests or the interests of other companies he owns, "cause" exists.  See In re Embrace Sys. Corp., 178 B.R. 112, 128 (Bankr. W.D. Mich. 1995); see also Keeley v. Keeley & Grananski Land P'Ship v. Keeley (In re Keeley & Grabanski Land P'Ship), 455 B.R. 153, 164 (B.A.P. 8th Cir. 2011) (discussing irreconcilable conflicts of interest).

24.      As set forth above, the Debtor is a single member LLC owned by Mr. Harrington, who also owns other hospitality projects, including the Acadia Collection Hotels.  At least one of those projects – the Asticou – is in serious financial trouble.  Public news reports[3] indicate that the Asticou has been in the process of renovation but has failed to pay various vendors and contractors, leading to over $14 million of mechanics' liens and other claims.  As a result, the Asticou is now the subject of an involuntary bankruptcy proceeding currently pending before this Court, Case No. 26-20030.

---

[3] https://www.bangordailynews.com/2025/10/23/hancock/hancock-police-courts/14m-liens-asticou-inn/

25374261.2

25.     As described above, upon information and belief, Mr. Harrington caused the Debtor to incur an $8 million loan from MutualOne Bank and most or all of those loan proceeds were used by or for the benefit of Mr. Harrington, including for renovations at other projects.

26.     Beyond questions about whether the MutualOne Bank loan transaction was supported by adequate consideration and/or constituted an avoidable fraudulent transfer,[4] Mr. Harrington's role in misusing the Debtor and its assets prebankruptcy calls into question whether he can properly exercise the fiduciary duties of a debtor-in-possession in chapter 11.  Absent the junior encumbrance of MutualOne Bank, the Debtor could likely have refinanced the Senior Lender's indebtedness during the prior forbearance periods, thereby potentially avoiding the need for this chapter 11 proceeding.   Mr. Harrington's mismanagement of the Debtor's affairs, and his conflicts of interest, constitute "gross mismanagement" because they cause creditors, including the Senior Lender, to lose confidence in his ability to discharge his fiduciary duties as a debtor-in-possession.

### C.     Lack of Reorganizational Purpose

27.     Third, "[a] lack of good faith constitutes 'cause' though it does not fall into one of the examples of cause specifically listed in the statute." In re LTL Mgmt., LLC, 58 F.4th 738, 753 (3d Cir. 2023). Courts "examine the totality of facts and circumstances and determine where a petition falls along the spectrum ranging from the clearly acceptable to the patently abusive." In re BEPCO, L.P., 589 F.3d 605, 618 (3d Cir. 2009). "Two inquiries . . . are particularly relevant . . . (1) whether the petition serves a valid bankruptcy purpose[;] and (2) whether [it] is filed merely to obtain a tactical litigation advantage." Id. This Court has recognized the lack of a valid reorganizational purpose as "cause," as have other bankruptcy courts in the First Circuit. See In re Pine State Housing,

---

[4] As a personal guarantor of the MutualOne debt, Mr. Harrington has a conflict of interest in challenging MutualOne's resulting liens.

9

Series, LLC, No. 17-20631, Dkt. No. 132, 134 (Cary, J.); In re Nesenkeag, Inc., 131 B.R. 246 (Bankr. D.N.H.1991); In re AmeriCERT, Inc., 360 B.R. 398 (Bankr. D.N.H. 2007); In re Camann, No. 00-11090-JMD, 2001 WL 1757075 (Bankr. D.N.H. 2001).

28.     Here, based on the totality of the circumstances, "cause" exists because there is no valid reorganizational purpose being pursued.  It is beyond question that the Debtor has no equity in its property.  If the property is sold, the proceeds will simply be distributed to the Senior Lender and potentially other secured parties, with no benefit to the estate's general unsecured creditors.  Notably, the Debtor's list of its 20 largest unsecured creditors [Dkt. No. 1] shows only 5 unsecured creditors – one of which is the Town of Kennebunkport (which is more likely than not a secured party) and the other 4 are owed an aggregate of approximately $7,000.  Thus, this is a dispute between the Debtor and its secured creditors, and state law property rules will determine the distribution of any sale proceeds between them.  The same result could be achieved far more efficiently by simply allowing the Senior Lender to complete its pending foreclosure – thereby transitioning the project to a new owner before the operating season that begins in May.  This result would maximize value, while this bankruptcy case only serves to impair value.

29.     Alternatively, it is difficult to conjure a chapter 11 plan that effectively reorganizes the Debtor.  The Senior Lender is likely fully secured, but any value beyond its liens is rapidly eroding due to post-petition interest and legal fees, as well as the administrative costs of chapter 11. This is likely to result in a chapter 11 plan with more unsecured claims than exist on the Petition Date, and the plan will need to comply with both the absolute priority rule and the feasibility requirements of the Bankruptcy Code.  Additionally, any hypothetical plan would need to pay secured parties a market rate of interest, which is likely to increase the applicable interest rates and thereby increase the strain of debt service on the Debtor's business operations to the detriment of

10

25374261.2

other estate constituencies.   Simply put, "cause" exists because this case serves no valid reorganizational purpose and further delay places the estate's creditors – particularly the Senior Lender – at imminent risk of unnecessary losses that would be mitigated by allowing the Senior Lender to exercise its rights and remedies now – before the 2026 season begins and in time for a new owner-operator to take over prior to the season.

**II.     The Senior Lender is Entitled to Stay Relief Because the Debtor Has No Equity in the Collateral, Which is Unnecessary for an Effective Reorganization**

30.     A party is also entitled to stay relief under Bankruptcy Code section 362(d)(2) "if – (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization.

31.     "Equity" for purposes of Bankruptcy Code section 362(d)(2)(A) means the value of the property, less all encumbrances. See Nazareth Nat'l Bank v. Trina-Dee, Inc., 731 F.2d 170 (3d Cir. 1984); Stewart v. Gurley, 745 F.2d 1194 (9th Cir. 1984); Matter of Sutton, 904 F.2d 327 (5th Cir. 1990).Under section 362(d)(2)(B), the focus is on an "effective" reorganization – "there must be a reasonable possibility of a successful reorganization within a reasonable time." United Savings Ass'n v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 375-76 (1988) (internal citations omitted).

32.     Here, as described above, there is no equity in the Collateral – a fact that the Debtor will certainly concede. While the value of the Collateral likely exceeds the amount of the Senior Lender's claims, the presence of the MutualOne Bank and Saco & Biddeford Savings encumbrances mean that the value is less than the aggregate amount of encumbrances, resulting in "no equity" under section 362(d)(2)(A).

25374261.2

33.     Additionally, as described above, there is no reasonable possibility of a successful reorganization within a reasonable period of time – either by sale or a chapter 11 plan.  For these reasons, the Senior Lender is also entitled to relief under section 362(d)(2).

**III.     Waiver of Stay Under Bankruptcy Rule 4001(a)(4)**

34.     Under Bankruptcy Rule 4001(a)(3), "Unless the court orders otherwise, an order granting a motion for relief from the automatic stay under (1) is stayed for 14 days after it is entered."

35.     Here, the Senior Lender requests that, if the Court grants stay relief, the order include a waiver of the stay so that the public sale may occur as soon as possible.  As set forth above, the Debtor's operating season begins in May, and it is critical that the Collateral be sold to a new owner-operator in advance of the season in order to maximize value.  The Senior Lender provided the Debtor with extensive forbearance to payoff the obligations in 2025, and promptly moved forward with a sale of the Collateral in early 2026.  The sale was scheduled for March 5, 2026, with a closing within forty-five (45) days, to ensure that the property could reopen for the season under new ownership.  Waiver of the stay under Bankruptcy Rule 4001(a)(4) is critical for that to occur.

**IV.     Alternatively, the Debtor's Case Should be Dismissed "For Cause"**

36.     "[O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."   11 U.S.C. § 1112(b)(1).

37.     "Cause" under section 1112(b) includes a non-exhaustive and non-exclusive list of factors.  11 U.S.C. § 1112(b)(4).  These factors include "gross mismanagement of the estate."  11

25374261.2

U.S.C. § 1112(b)(4)(B).  As set forth above, Mr. Harrington's mismanagement and conflicts of interest constitute "gross mismanagement" – and thus "cause" – for dismissal.

38.     Additionally, "cause" exists for the other reasons set forth above, including the lack of a reorganizational purpose for the Debtor's chapter 11 case.

**V.      Alternatively, the Court Should Appoint a Chapter 11 Trustee**

39.     Upon the request of a party in interest or the United States Trustee, the court may order the appointment of a trustee to replace the debtor-in-possession "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management either before or after the commencement of the case, or similar cause . . . or . . . if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate . . . ." 11 U.S.C. § 1104(a). "A debtor in possession may . . . be inappropriate when there are irremediable conflicts or when creditors have completely lost confidence in the management of the business." 7 COLLIER ON BANKRUPTCY ¶ 1104.02[1].

40.     In determining whether  appointment of a trustee is in the best interests of creditors, bankruptcy courts in the First Circuit apply a balancing test:

> The considerations require a balancing of competing interests. "Determining whether appointment of a trustee is in the interests of the various constituencies of the estate is fact-specific and requires the court to balance the benefits of such an appointment against its anticipated costs." In re LHC, LLC, 497 B.R. at 293 (citation omitted). Some factors to be considered are: (1) the trustworthiness of the debtor, (2) the past and present performance of the debtor and the prospects for rehabilitation, (3) the confidence level of creditors and the business community in the debtor, and (4) whether the benefits of appointing a trustee outweigh the associated costs. Id. (citation omitted); Taub v. Taub (In re Taub), 427 B.R. 208, 227 (Bankr.E.D.N.Y.2010). In many instances the bankruptcy court's considerations relating to cause under § 1104(a)(1) and the best interests of the creditors under § 1104(a)(2) are "intertwined and dependent upon the same facts." In re Grasso, 490 B.R. 500, 506 (Bankr.E.D.Pa.2013).

13

25374261.2

United Sur. and Indem. Co. v. Lopez-Munoz (In re Lopez-Munoz), 553 B.R. 179, 195-96 (B.A.P.

1st Cir. 2016).

41.     Additionally, where "cause" exists under Bankruptcy Code section 1112(b), the

Court may appoint a trustee where it is in the best interests of creditors and the estate, rather than

dismiss or convert the case.

42.     Here, as discussed above, "cause" exists for appointment of a trustee under section

1104(a) due to Mr. Harrington's gross mismanagement and conflicts of interest.  Additionally,

appointment is in the best interests of creditors because the benefits outweigh the costs.  Mr.

Harrington's misuse of the Debtor's assets indicates his untrustworthiness to serve as the manager

of a debtor-in-possession, and creditors need an independent fiduciary to have confidence in this

case if it continues. For the same reasons, if the Court does not dismiss the case, appointment of a

trustee is in the best interests of creditors under section 1112(b) and is required due to the real and

substantial disabling conflicts of interest that Debtor's ownership and management is laboring

under.  For instance, Mr. Harrington cannot be trusted to investigate and challenge MutualOne's

claims and liens, or to collect amounts that he personally owes to the Debtor.

## VI.     Request for Expedited Determination and Limitation of Notice

43.     Pursuant to LBR 9013-4(a), "If a movant seeks to have the court consider a motion

earlier than the default deadlines created by these rules or the Federal Rules, but  more than 48

hours after the motion is filed, the title of the motion shall include the language 'Request for

Expedited Determination."  Additionally, the motion "shall (i) list the facts and circumstances

that justify such a determination and (ii) identify the day, or alternatively a range of days, desired

by the movement for the determination."

14

25374261.2

44. Here, an expedited hearing on the relief requested herein is justified. First, due to the operation of Bankruptcy Code section 362(e)(1), an expedited preliminary hearing is necessary because the automatic stay terminates thirty (30) days after this Motion is filed, unless the Court determines – after notice and a hearing – that the party opposing relief is reasonably likely to prevail at a final hearing. Thus, commencing proceedings on the Motion as quickly as possible is in the best interests of all parties and judicial economy. Second, as discussed above, the timing of relief is critical because the Debtor operates a seasonal hospitality business that begins its operating season in May. If stay relief or dismissal is ordered, conducting and concluding a sale to a new owner-operator before the season starts is critical to maximizing value. Alternatively, if a trustee is appointed, having the trustee in place prior to the season will ensure that the trustee is able to make key business decisions about the operating season. For these reasons, an expedited hearing is necessary.

45. The Debtor has filed a motion for authority to use cash collateral and sought an expedited hearing on or before March 2, 2026. The Senior Lender requests that a preliminary hearing on this Motion be scheduled for the same date and time.

46. Additionally, under LBR 9013-4(c): "If a movant seeks to limit notice of a motion that includes a request for an expedited or emergency determination, the motion shall: (1) include the language "Request for Limitation of Notice" in its title; (2) list the facts and circumstances that justify limitation of the notice that would otherwise be required; (3) designate the recipients to whom the notice should be limited; (4) recommend a manner of notice reasonably calculated to inform affected parties of the motion and the request for an emergency or expedited determination in a manner that is reasonably appropriate in the circumstances; and (5) include a representation

15

25374261.2

that the movant made a good faith effort to advise all affected parties of the time and date of the hearing."

47.    Because of the exigent nature of this request, limited notice is also justified. The Senior Lender proposes to provide notice via overnight mail to the following parties: (i) the Debtor; (ii) the Office of the United States Trustee; (iii) all parties on the Debtor's list of twenty largest creditors; (iv) to the extent not included on the list of twenty largest creditors, all lienholders set forth herein; (v) Maine Revenue Services; and (vi) Internal Revenue Service. The Senior Lender submits that these parties are most likely to have a significant interest in the outcome of the Motion. Further, the Senior Lender submits that this manner of notice is reasonably calculated to inform affected parties of the motion and the request for an expedited determination in a manner that is reasonably appropriate under the circumstances, and that these efforts constitute good faith efforts to advise all affected parties of the time and date of the hearing.

WHEREFORE, the Senior Lender requests that the Court enter an order granting one of the alternative forms of relief requested by this Motion.

Dated: February 25, 2026                    Respectfully submitted,

                                            /s/ Jeremy R. Fischer
                                            Jeremy R. Fischer
                                            **PRETI FLAHERTY**
                                            One City Center, P.O. Box 9546
                                            Portland,  Maine  04112-9546
                                            (207) 791-3000
                                            jfischer@preti.com

                                            *Counsel to Bangor Savings Bank*

16

25374261.2